UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DATACLOUD TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SOPHOS LTD., <br><br> Defendant. | Civil Action No. 2:23-cv-00508 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff DataCloud Technologies, LLC (hereinafter, "Plaintiff" or "DataCloud") files this Complaint for patent infringement against Defendant Sophos Ltd. (hereinafter, "Defendant" or "Sophos") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D, Exhibit E,** and **Exhibit F**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 6,651,063 | Data Organization And Management System And Method |
| B. | 7,139,780 | System And Method For Synchronizing Files In Multiple Nodes |
| C. | 7,209,959 | Apparatus, System, And Method For Communicating To A Network Through A Virtual Domain Providing Anonymity To A Client Communicating On The Network |
| D. | 7,398,298 | Remote Access And Retrieval Of Electronic Files |
| E. | 8,156,499 | Methods, Systems And Articles Of Manufacture For Scheduling Execution Of Programs On Computers Having Different Operating Systems |
| F. | 8,370,457 | Network Communication Through A Virtual Domain |

2. Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3.    DataCloud is a limited liability company organized and existing under the laws of the State of Georgia and maintains its principal place of business at 44 Milton Avenue, Suite 254, Alpharetta, Georgia, 30009 (Fulton County).

4.    Based upon public information, Sophos is a foreign corporation duly organized and existing under the laws of the England and Wales.

5.    Based upon public information, Sophos lists its registered offices at The Pentagon, Abingdon, OX14 3YP, United Kingdom.

6.    Based upon public information, Sophus has established offices in Burlington, Massachusetts, Dallas, Texas, Cranberry, Pennsylvania, and New York, New York.

## JURISDICTION AND VENUE

7.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.    This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

9.    The Court has personal jurisdiction over Sophos because: Defendant has minimum contacts within the State of Texas and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this District; Defendant has sought protection and benefit from the laws of the State of Texas; Defendant regularly conducts business within the State of Texas and within this District, and Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Texas and in this District.

10.    More specifically, Defendant directly and/or through its intermediaries, ships,

distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and services in the United States, the State of Texas, and in this District.

11. Specifically, Defendant intends to do and does business in, has committed acts of infringement in this District directly, and offers its services, including those accused of infringement here, to customers and potential customers located in the State of Texas, including in this District.

12. Therefore, venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant, a foreign entity, has committed patent infringement in this District.

## THE ACCUSED PRODUCTS

13. Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.sophos.com through which it advertises, sells, offers to sell, provides and/or educates customers about its website hosting platforms. *See* **Exhibit G.**

14. Defendant offers at least the following products (hereinafter, the "Accused Products"; *see* **Exhibit H**):

- o Sophos Android App;
- o Sophos systems for device public key management and distribution ("Sophos Public Key Systems");
- o Sophos website infrastructure supporting multiple domains ("Sophos Website Infrastructure");
- o Sophos Central for managing user roles and permissions and for scheduling and executing remote firmware updates ("Sophos Central");
- o Sophos firewall using TLS 1.2 and/or 1.3 ("Sophos TLS").

15. By letter dated December 13, 2022, Defendant was informed of DataCloud's patent portfolio, including the Patents-in-Suit.

## COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 6,651,063</u>

16. Plaintiff re-alleges and incorporates by reference each of the paragraphs above as though fully set forth in their entirety.

17. U.S. Patent No. 6,651,063 (the "'063 patent") was issued on November 18, 2003 after full and fair examination by the USPTO of Application No. 09/493,911 which was filed on January 28, 2000. *See* Ex. A, at A-1. A Certificate of Correction was issued on February 3, 2004. *See id.* at A-20.

18. The claims of the '063 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve networks and network systems by providing an organization scheme to streamline the process for storage and retrieval of information through a combination of automatic categorization and user influence.

19. The written description of the '063 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

20. DataCloud owns all substantial rights, interest, and title in and to the '063 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

21. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '063 patent.

22. Based upon public information, Plaintiff is informed and believes that Defendant

has infringed one or more claims of the '063 patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises Sophos Android App.

23. Upon information and belief, the Sophos Android App meets each and every step of at least Claim 4 of the '063 Patent, either literally or equivalently.

24. Based upon public information, Defendant's provision of Sophos Android App has infringed one or more claims of the '063 Patent, including Claim 4 because it provides to one or more users a method for storing and controlled access of data in a repository by storing information in an "information pack" (*e.g.*, uploading to servers/saving image files) to which is associated the address of one of a multiplicity of data repositories associated with at least one of the users, a category identifier (*e.g.*, "data" directory), and a provider identifier (Sophos). The information pack is sent to and stored in the specified data repository and stored there in a custom location reserved for the specified category identifier that is specifically created for the information pack (*e.g.*, file folder in the Sophos Android application is reserved for information), and a custom category identifier (*e.g.*, custom category identifier can be the digital signature for either of the Sophos Android applications) is assigned to the information pack. The custom category identifier is subsequently used to identify other information packs that should be stored in the same location based on matching category identifiers (*e.g.*, valid Android APK files contain a signature which allows to identify the author of the APK file, which allows verification that an updated version comes from the same author) by sending a custom category signal to a processing station uniquely associated with said user data repository.

25. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

26. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II:  <u>INFRINGEMENT OF U.S. PATENT NO. 7,139,780</u>

27. Plaintiff re-alleges and incorporates by reference each of the paragraphs above as though fully set forth in their entirety.

28. U.S. Patent No. 7,139,780 (the "'780 patent") was issued on November 21, 2006 after full and fair examination by the USPTO of Application No. 10/335,516 which was filed on December 30, 2002.  *See* Ex. B, at B-1.

29. The claims of the '780 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve how computerized communications systems synchronize files across multiple nodes.

30. The written description of the '780 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

31. DataCloud owns all substantial rights, interest, and title in and to the '780 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

32. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the

'780 patent.

33. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '780 patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises Sophos Public Key Systems.

34. Upon information and belief, the Sophos Public Key Systems meets each and every step of at least Claim 1 of the '780 Patent, either literally or equivalently.

35. Based upon public information, Sophos Public Key Systems have infringed and continues to infringe one or more claims of the '780 patent, including Claim 1, because it provides a method for synchronizing files between a central node and local nodes, each of which consists of a file server with a database and an application to allow for automatic updates using Sophos Public Key Systems, which method includes (a) storing one copy of each file (*e.g.*, a key) that is shared between the local nodes (*e.g.*, the systems comprising the devices/device network); (b) creating a first table in each of the local databases to store information on copies of files in its respective local device (*e.g.*, the databases with the key); (c) creating a second table in the central database to record all update information on copies of files in all the devices; (d) updating a copy of a file in one of the devices (*e.g.*, using Sophos Public Key Systems); (e) adding a new item of update information on the file in the second table; (f) downloading the updated copy of the file from said one of the local file servers (*e.g.*, the key), and uploading the updated copy of the file to the central file server as the latest edition of the file (*e.g.*, latest version of the key); (g) determining whether a required copy of the file in another of the local file servers needs to be updated; and (h) downloading the latest edition of the file from the central file server to update said another of the local file servers if the required copy of the file needs to be updated.

36. Based upon public information, Defendant's customers use its products and services in such a way that infringes one or more claims of the '780 patent. *See* Ex. H.

37. Based upon public information, Defendant has intentionally induced and continues to induce infringement of one or more claims of the '780 patent in this District and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused Defendant's customers to use Sophos Public Key Systems in an infringing manner. *See* Ex. H.

38. To the extent that Defendant is not the only direct infringer of one or more claims of the '780 Patent, it instructs its customers on how to use Sophos Public Key Systems in ways that infringe one or more claims of the '780 patent through its support and sales activities. *See* Ex. H.

39. Despite knowledge of the '780 patent on December 13, 2022[1] (or at the latest, upon service of the Complaint), Defendant, based upon public information, continues to encourage, instruct, enable, and otherwise cause its customers to use its products and services, in a manner which infringes one or more claims of the '780 patent. Based upon public information, the provision of and sale of Sophos Public Key Systems is a source of revenue and a business focus for Defendant. *See* Ex. H.

40. Based upon public information, Defendant specifically intends its customers to use its products and services in such a way that infringes one or more claims of the '780 patent by, at a minimum, providing and supporting Sophos Public Key Systems and instructing its customers on how to use them in an infringing manner, at least through information available on Defendant's website including information brochures, promotional material, and contact information. *See* Ex.

---

[1] See Paragraph 15.

H.

41. Based upon public information, Defendant knew that its actions, including, but not limited to any of the aforementioned products and services, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using Sophos Public Key Systems.

42. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

43. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,209,959</u>

44. Plaintiff re-alleges and incorporates by reference each of the paragraphs above as though fully set forth in their entirety.

45. U.S. Patent No. 7,209,959 (the "'959 patent") was issued on April 24, 2007 after full and fair examination by the USPTO of Application No. 09/542,858 which was filed on April 4, 2000. *See* Ex. C, at C-1.

46. The claims of the '959 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve networks and network systems by anonymizing network activity for individual clients and groups of clients for, among other reasons, security, traffic management, and routing purposes.

47. The written description of the '959 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how

the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48. DataCloud owns all substantial rights, interest, and title in and to the '959 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

49. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '959 patent.

50. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '959 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises Sophos Website Infrastructure.

51. Upon information and belief, Sophos Website Infrastructure meets each and every step of at least Claim 1 of the '959 Patent, either literally or equivalently.

52. Based upon public information, Defendant has infringed one or more claims of the '959 Patent, including Claim 1, because Sophos Website Infrastructure provides a method of, in response to a request (*e.g.,* "Client Hello") by a client to initiate communication with a destination website (*e.g.,* sophos.com, www.sophos.com, support.sophos.com, store.sophos.com, surveys.sophos.com, swa.sophos.com) setting up a forwarding session (*e.g.*, from the internet to a WWW server) between the client (*e.g.*, internet device) and a destination server corresponding to the destination website (*e.g.*, WWW server), the forwarding session employing a forwarder disposed between (*e.g.*, a front-end server switch) the client and the destination server to forward

packets sent from the client to the destination server and to forward packets sent from the destination server to the client (*e.g.,* bilateral communications); employing the forwarder (*e.g.,* front-end server switch), to transfer packets (*e.g.*, ethernet or others) between the client (*e.g.*, internet device) and the destination server (*e.g.*, WWW server) during the forwarding session, wherein the forwarding session is set up and implemented such that neither the client or the destination server is aware of the employment of the forwarder (*e.g.*, the WWW server has a direct TCP connection between a local IP address and a client IP address, each being different; thus, neither the client or the destination server is aware of the employment of the forwarder); employing a controller configured to communicate (*e.g.*, firewall) with the forwarder (*e.g.*, front-end server switch) and a domain name server (*e.g.*, a DNS), wherein the controller queries the domain name server to resolve the name of the destination website (*e.g.,* www.sophos.com, support.sophos.com, store.sophos.com, surveys.sophos.com, swa.sophos.com) associated with the destination server (*e.g.*, WWW server) and initiates communication (*e.g.*, between the firewall and front-end server switch) with the forwarder in response to an answer from the domain name server to resolve the name of the destination website associated with the destination server; employing a deceiver (*e.g.*, router) configured to communicate with the controller (*e.g.*, firewall) and the client (*e.g.*, internet device), wherein the deceiver receives the request by the client to initiate communication (*e.g.*, from the internet to the router) with the destination website (*e.g.*, www.sophos.com, support.sophos.com, store.sophos.com, surveys.sophos.com, swa.sophos.com on a WWW server) and initiates the controller to query the domain name server to resolve the name of the destination website associated with the destination server (*e.g.*, the router both (i) receives the request and (ii) sends the data from the WWW server in a manner that makes the router appear to be the source of the data, when the source of the data is actually the WWW server); and in response to the controller

(*e.g.*, router) receiving the answer from the domain name server and initiating communication with the forwarder initiating the forwarding session.

53. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

54. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: **INFRINGEMENT OF U.S. PATENT NO. 7,398,298**

55. Plaintiff re-alleges and incorporates by reference each of the paragraphs above as though fully set forth in their entirety.

56. U.S. Patent No. 7,398,298 (the "'298 patent") was issued on July 8, 2008 after full and fair examination by the USPTO of Application No. 11/690,803 which was filed on March 23, 2007. *See* Ex. D, at D-1.

57. The claims of the '298 Patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the retrieval and transmission of data from and/or to a remote server.

58. The written description of the '298 Patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

59. DataCloud owns all substantial rights, interest, and title in and to the '298 Patent,

including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

60. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '298 Patent.

61. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '298 Patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises Sophos Central for managing user roles and permissions ("Sophos Central").

62. Upon information and belief, Sophos Central meet each and every step of at least Claim 13 of the '298 Patent, either literally or equivalently.

63. Based upon public information, Defendant's provision of Sophos Central as infringed and one or more claims of the '298 Patent, including Claim 13, because it provides a method for remotely controlling data directory structures (*e.g.*, webpages and functions accessible to discrete users) across at least one communications network (*e.g.*, Internet) that has a computer server (*e.g.*, WWW server), the computer server coupled to the communications network (*e.g.*, Internet); a remote data directory structure management computing application (*e.g.*, the Sophos Central dashboard for managing user roles and permissions) operating on the computer server (*e.g.*, WWW server) to process received requests for remote data directory management (*e.g.*, adding users, etc.) of desired data residing in directory structures by participating users (*e.g.*, admins, default users that have been assigned to roles, etc.); and a profile data store (*e.g.*, a secure SQL server/database) comprising information relating to the data and data directory structures (*e.g.*, information on permissions, activations, files, and operations available to users and/or roles)

accessible to each of the participating users (*e.g.*, various user groups), wherein the profile data store is queried for the data directory structures accessible to each of the participating users (*e.g.*, role definitions indicate directory structure for each role to determine the user's abilities/permissions/activations), wherein further a single directory structure (*e.g.*, abilities/permissions/activations for users must be selected in the profile/account settings) from among a plurality of the data directory structures associated with the profile data store (*e.g.*, the available profile/account settings for users/roles) is selected by each of the participating users for modification (the invited user can accept the invitation or access).

64. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

65. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V:   INFRINGEMENT OF U.S. PATENT NO. 8,156,499

66. Plaintiff re-alleges and incorporates by reference each of the paragraphs above as though fully set forth in their entirety.

67. U.S. Patent No. 8,156,499 (the "'499 patent") was issued on April 10, 2012 after full and fair examination by the USPTO of Application No. 12/331,980 which was filed on December 10, 2008. *See* Ex. E, at E-1.  A Certificate of Correction was issued on September 25, 2012.  *See id.* at E-18 to E-19.

68. The claims of the '499 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve the retrieval and transmission of data from and/or to a remote

server.

69.     The written description of the '499 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

70.     DataCloud owns all substantial rights, interest, and title in and to the '499 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

71.     DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '499 patent.

72.     Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '499 patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises Sophos Central for scheduling and executing remote firmware updates ("Sophos Central").

73.     Based upon public information, Sophos Central has infringed one or more claims of the '499 Patent, including Claim 1, because it provides a method scheduling a first computer (*e.g.*, "SG230") communicatively coupled with the scheduling computer (*e.g.*, "Sophos Central firewall management server) to execute a first program (*e.g.*, the "SFOS 18.0.3 MR-3" firmware update) wherein the first computer has a first operating system (*e.g.*, on a first computer); receiving at the scheduling computer a result from the first computer (*e.g.*, current firmware version, like

"SFOS 18.0.1 MR-1" and whether it is synchronized), wherein the result from the first computer is based at least in part upon the execution of the first program by the first computer (*e.g.*, the installation is based on the current version of the firmware); and scheduling a second computer (*e.g.*, a firmware update) communicatively coupled with the scheduling computer to execute a second program in response to a determination that the result from the first computer meets a criterion (*e.g.*, firmware needs to be updated) wherein the second computer has a second operating system and the second operating system is different from the first operating system (*e.g.*, the operating system on the second server is different from the first).

74. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

75. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: <u>INFRINGEMENT OF U.S. PATENT NO. 8,370,457</u>

76. Plaintiff re-alleges and incorporates by reference each of the paragraphs above as though fully set forth in their entirety.

77. U.S. Patent No. 8,370,457 (The "'457 patent") was issued on February 5, 2013 after full and fair examination by the USPTO of Application No. 11/717,911 which was filed on March 13, 2007. *See* Ex. F, at F-1. A Certificate of Correction was issued on March 18, 2014. *See id.* at F-11.

78. The claims of the '457 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve networks and network systems by anonymizing network

activity for individual clients and groups of clients.

79. The written description of the '457 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

80. DataCloud owns all substantial rights, interest, and title in and to the '457 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

81. DataCloud or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '457 patent.

82. Based upon public information, Plaintiff is informed and believes that Defendant has infringed one or more claims of the '457 patent, either literally or under the doctrine of equivalents, because it ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises Sophos TLS.

83. Upon information and belief, Sophos TLS meets each and every step of at least Claim 9 of the '457 patent, either literally or equivalently.

84. Based upon public information, Sophos TLS has infringed one or more claims of the '457 patent, including Claim 9, through its advanced firewall settings in the gateway because it establishes a forwarding internet protocol (IP) address (translated IP address) for a pre-defined combination of a client IP address (*e.g.,* 10.10.XX.XX) and a destination IP address (*e.g.,* 168.10.XX.XX), it identifies, in a data request received from the client IP address, the pre-defined

combination, and in response to the identifying of the pre-defined combination, forward (*e.g.,* from "Host A" to the NAT Router) the data request via (*e.g.,* commands are configured to translate source addresses to the destination IP address for all packets with IP destination addresses in the 168.10.XX.XX/24 subnet) the forwarding IP address to the destination IP address (*e.g.,* on "Host B").

85. Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

86. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

87. Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

88. Plaintiff respectfully requests the following relief:

   A. An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

   B. An award of damages to be paid by Defendant adequate to compensate Plaintiff Defendant's past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

   C. A permanent injunction enjoining Defendant and its officers, directors, agents,

    servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '780 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patent by such entities;

D. Judgment that Defendant's infringements be found willful as to '780 patent; and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

E. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

F. this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

G. Any further relief that this Court deems just and proper.

Dated: November 3, 2023

Respectfully submitted,

*/s/ James F. McDonough, III*

James F. McDonough, III (GA 117088)*
Jonathan R. Miller (GA 507179)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com

***Attorneys for Plaintiff DATACLOUD TECHNOLOGIES, LLC***

\* admitted to the Eastern District of Texas

**LIST OF EXHIBITS**
- A. U.S. Patent No. 6,651,063
- B. U.S. Patent No. 7,139,780
- C. U.S. Patent No. 7,209,959
- D. U.S. Patent No. 7,398,298
- E. U.S. Patent No. 8,156,499
- F. U.S. Patent No. 8,370,457
- G. Webpage: https://home.sophos.com/en-us
- H. Webpage: https://news.sophos.com/en-us/category/products-services/